## SCHRADER *v.* DECKER.

The acknowledgment of a deed by husband and wife, for the wife's land, may be shown to have been obtained by fraud and duress of the wife, and thus avoided as to volunteers or purchasers with notice: *aliter* as to *bonâ fide* purchasers without notice.

A deed by an infant feme covert regularly acknowledged, though dated after she came of age, is void.

IN error from the Common Pleas of Bradford (special court). *July* —.   The plaintiff in this ejectment showed title in Rebecca Schrader, and a conveyance from her in 1844.   In 1841, she had been divorced from her husband.   The defendants set up two conveyances of the land from Rebecca Schrader and her husband: one dated Feb. 17, 1810, to Means, and the other dated Jan. 16,

1811; and proved that as to part of the land, some of the defendants were purchasers for value. These deeds contained certificates of acknowledgment before a justice of the peace, the particulars of which were not on the record. The plaintiffs then offered to prove that the first deed was in fact executed while Mrs. Schrader was an infant, though dated after she attained full age. That the second deed was executed and acknowledged by her when in childbed. That the consideration actually passed was worthless, and that the grantee was a tavern-keeper, who had supplied her husband with liquor, &c. That the deed and certificate were prepared and brought to the house, and that her husband and two others went into her chamber, where she was confined to her bed, and endeavoured to persuade her to execute it, but she at first refused. After two hours passed in this manner, and the grantee representing that her husband would be able to redeem the land, and he promising to do so, she consented, and the justice was then called in, and signed the acknowledgment. The only question asked by him was whether the signature was hers, and if she acknowledged that deed—at which time her husband was present.

The evidence, so far as it respected the second deed, was rejected, and this was the error assigned.

*Bancroft* and *Case*, for plaintiff in error, cited 5 S. R. 523, 289; 3 Yeat. 471; 1 Dall. 11, 17; 2 Barr, 341; 2 Whart. 246; 1 Barr, 470; 4 John, 161; 20 Ib. 477; 12 Ib. 468; 1 Ib. 419, 498; 2 Ashm. 454; 7 S. & R. 170; 2 Wend. 308; 2 John. 230.

*Elwell* and *Overton*, contrà, 9 S. & R. 269; 3 Wh. 457; 2 W. & S. 314.

*July* 17.   Gibson, C. J.—There was not even a plausible objection to the evidence proposed, except the supposed impolicy of allowing the certificate of a wife's separate examination to be falsified by parol evidence. Such evidence is undoubtedly attended with a greater or less degree of risk in every case; but it is indispensable to the detection of fraud, even in a record against which the law allows of no direct averment. Our statutory provision for a wife's conveyance by joinder with her husband, and acknowledgment on separate examination, is a substitute for a fine, by which alone the common law allowed her to part with her land; and it is true, as we read it in Sheppard's Touchstone, p. 9, that "if there be any woman that hath a husband (and) that doth join with her husband in the conveyance, the judges or commissioners must take

care that they do examine her whether she be willing, and do part
with her right in the land willingly or by compulsion of her hus-
band; for albeit she may be made to do it by compulsion of her
husband, yet hath she no way to relieve herself from it when it is
done." But it is said in 1 Madd. Ch. 266, that if *fraud* were prac-
tised, equity would relieve against it; which is certainly true, for
no separate examination can guard against that. The principle is
no more than the rudimental one, that fraud vitiates every assur-
ance whether by matter of record, or *in pais;* and even had the
conveyance in this instance been by fine, it would have been open
to ·impeachment on that ground. But as the equity side of our
courts of law is not broad enough to admit of relief by bill, we are
compelled to give effect to the principle by pleading or evidence,
as the court below ought to have done. But we would deprive
married women of all substantial protection, did we give to the
separate examination of a judge, or a justice of the peace, the con-
clusive effect of an examination by commissioners to levy a fine,
which is much more private, careful, and searching. Every one
conversant with the subject, knows the inutility of a separate exa-
mination under our statute, even by the most careful, and how
often the form of it is hurried over almost in the presence of the
husband, or, as in the case before us, dispensed with altogether.
Even where the magistrate is too conscientious to be satisfied with
less than full and unreluctant acquiescence, the husband may take
her to a less scrupulous one. The necessities of justice therefore
demand that the transaction be open to objection, not only for
fraud, but concealed duress; and the case presented is a rank
compound of both. The deed for a part of the property, being
executed while the wife was an infant, is absolutely void; and the
deed for the residue is open to objections as decisive. It was
given to a tavern-keeper, partly in payment of a profligate hus-
band's debt, contracted in a course of drunkenness and debauchery;
and it was thus procured: Means, the grantee, attended by his
wife, a man called Dininger, who had no proper concern with the
business, and an inexperienced justice picked up by the way, re-
paired to the house of the husband, while the wife was in the throes
of child-birth. Means, his wife, and Dininger, entered the sick
woman's chamber, and met, in the first instance, with the repulse
they had reason to expect. It was not till she had been badgered
during two hours, and worn out by the importunity of her husband,
as well as deceived with false assurances by the rest of the party,
of her husband's right and ability to redeem the land, that they

worked her to their will. The justice was then called in; and having barely asked her in the presence of her husband, whether the instrument she had executed was her deed, signed the certificate which had been brought along for the occasion. In addition, the land was of much greater value than the price which was paid for it in worthless accounts and charges. If these circumstances are proved, particularly the crisis selected for the transaction, the instruments employed to bend her to their purpose, and the deception effected by their false assurances, they will show the existence of a conspiracy to strip her of her property, by force or fraud, and the jury will have no more to do than to find for the plaintiff all the land which had not been paid for to Means, or his voluntary grantee, and all that may have been paid for with knowledge of the fraud. To do less, would disgrace the administration of justice.

Judgment reversed, and a *venire de novo* awarded.