## Diehl and Wife *versus* Emig *et al.*

1. The contents of a deed lost, destroyed or suppressed may be established by parol evidence in ejectment, when its existence has first been proved.

2. The effect of such proof is as strong in sustaining the title of the grantee as if the deed had been presented.

3. All competent evidence for such purpose should be received, whether in logical sequence or not; especially if offered to be followed, by what would make out a complete case.

4. When the testimony is in, the judge should inform the jury what is to be extracted from the body of it, in order to make out a good and solid case in law and what would be the effect of a failure.

5. Some proof being given of a conveyance the acts and declarations of the grantor in accordance with it are evidence.

6. Proof that a grantor requested a scrivener to draw a deed for certain land; that such deed had been prepared and given to the grantor; that he afterwards showed it signed by him and witnessed by one witness, with a magistrate's certificate of acknowledgment; that he requested the person to whom he showed it to witness, which he did, was in the absence of countervailing evidence, primâ facie evidence of the execution of a lost deed including delivery.

7. In such case the onus to prove non-delivery would be on those resisting the deed.

8. Evidence admissible *in odium spoliatoris*.

9. If the jury be convinced of the spoliation, it is their duty to infer everything in favor of the deed and against the spoiler.

10. The existence of a lost deed requires clear and full proof.

11. In an ejectment by a daughter grounded on a lost deed of gift from her deceased father, she and her husband would be witnesses as to what occurred since but not before his death, under the Act of April 9th 1870.

May 4th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *York county*: No. 50, to May Term 1870.

[Diehl v. Emig.]

In the court below, George W. Diehl and Sarah his wife, in her right, brought an action of ejectment against William Moul. The writ was issued April 15th 1868, for a tract of 185 acres of land, which had been the property of John Emig, Sr., deceased. After the bringing of the suit, John Emig, Jr., Valentine Emig and Eli Emig, executors of the decedent, were permitted to appear and defend as landlords.

The plaintiff, Sarah Diehl, who was a daughter of the deceased, claimed that the land had been conveyed to her by the decedent, by a deed which she alleged was in the possession of the defendants, or had been lost. The defendants claimed under the will of the decedent, by which he directed the land in controversy to be sold.

· The court below rejected the evidence offered by the plaintiff, as hereafter stated, and directed the jury to find for the defendants.

The offers were: C. To prove by Philip Smyser, that in the year 1850, John Emig, Sr., requested him to draw a deed of conveyance from himself to his daughter Sarah for the land in dispute. That witness prepared such a deed and handed it to said Emig, who soon afterwards exhibited said deed to witness. That when said deed was so exhibited to witness it had been signed by said Emig and witnessed by one subscribing witness, and that there was also a certificate of acknowledgment duly signed, upon said deed. That said Emig then and there declared to witness that said deed was right, and requested witness to sign it as an additional subscribing witness, which he did, by writing his name under the words, " signed sealed and delivered in presence of us." That said Emig soon afterwards notified Moul, then the tenant on said farm, under said Emig, that he was no longer the owner of said farm, that it " now belongs to Sarah and you must rent it from her." To be followed by proof by other witnesses that said Emig, soon after the execution of said deed, declared that he was no more the owner of said farm, that " it now belongs to my daughter Sarah." That soon after the execution of said deed, said John Emig, Sr., declared to other witnesses, in the presence of said Sarah, that she had given him all her writings to take care of for her as long as he lived ; and that he had put them in a tin box together with his own papers and had placed said box in the vaults of the York Bank for safety against fire. That after the marriage of said Sarah, said John Emig, Sr., was requested by his son Michael to give Sarah her writings; that he refused and said Sarah had given him her writings and money to take care of for her as long as he lived and he would do it. That at the death of said John Emig, Sr., (in February 1868), said tin box containing a number of deeds and other valuable papers, was found in possession of his son John Emig, Jr., one of the defendants; and

15 P. F. Smith—21

[Diehl *v.* Emig.]

that said John Emig, Jr., as well as all the rest of said defendants have been duly notified by plaintiffs to produce said deed and also said tin box with all deeds and other papers found in said box immediately after the death of said John Emig, Sr., The foregoing is offered to the *court* only, for the purpose of showing the formal execution and delivery of said deed to his daughter Sarah ; under which deed the plaintiffs claim title to the lands described in the suit.    To be followed by proof that from and after the time of the formal execution and delivery of said deed, said John Emig, Sr., acted as the agent of said Sarah in the leasing and management of said farm ; in the collecting of the rents, issues and profits thereof; and that from time to time he declared to numerous witnesses that the farm now belonged to her, that he was acting and managing it for her as her agent; that she was to "pay nothing out" on said farm, because the rest of his children had been advanced in money and she had not.    This latter part of the offer is not for the purpose of showing title or the creation of estate, but as corroborative evidence from which the jury may infer the *actual* delivery of said deed to the grantee, plaintiff in this suit.

D.—To prove by Sarah Diehl, the plaintiff, that about the year 1850, while she and her father lived together on East Main street, in the borough of York, her father, John Emig, Sr., now deceased, gave her a paper writing which she then received, saying to her at the time that it was a deed for the farm claimed in this suit; that she put the paper away in her bureau and retained it there until after the fire which occurred near there, when she gave the paper back to him at his request for safe keeping—and in connection with the above, that the said witness is unable to read writing. This offer, made in connection with offer "C.", which has just been rejected by the court, for the purpose of showing delivery of the deed, and from which the jury may infer the delivery of the deed written by Philip Smyser, Esq.

E.—To prove by George W. Diehl, one of the plaintiffs, that he was present with his wife Sarah at the house of John Emig, Jr., about four weeks after the death of John Emig, Sr., who died at the house of said John Emig, Jr. ; that there were then present all of the children and some of the other relatives of said decedent, who had assembled to hear the will of said decedent read ; that the tin box mentioned in offer "C." was there produced by said John Emig, Jr., and was opened ; that Michael Emig, one of the sons of said decedent, rose from his seat and advanced toward the table on which the said box was placed ; that thereupon John Emig, Jr., placed both hands over the said open box, and said aloud "no one has a right to search in this box except us, for the will." That Valentine Emig, one of these defendants, was standing beside the table immediately before the witness, and took a package of deeds out of the said box, and took a new-looking deed out

[Diehl *v.* Emig.]

of the said package, opened and looked at its contents; that said witness standing immediately behind him, also looked into the said deed; that he saw that it was a deed from John Emig, Sr., to Sarah Emig; that John Emig, Jr., then said sharply to Valentine Emig, "put that paper back in the box, you'll get them mixed up;" and that Valentine Emig then quickly folded up the deed and put it back in the box. That the said witness was present a few weeks afterwards when decedent's effects were appraised at the same place, and saw the same box produced by said John Emig, Jr., and opened, and the papers contained therein fully examined, and that said deed from John Emig, Sr. to Sarah Emig, was not found among them. This evidence offered in connection with offers " C." and " D.," for the purpose of accounting for the non-production of the deed under which the plaintiff claims title.

F.—Portions of a deposition of Michael Emig, as follows:—

" I was present at my brother John's, after father's death, about four weeks, and saw this same tin box there. There were two letters on this box—the letter 'J.' and letter 'E.' Valentine, John, Eli, Sarah, her husband, Diehl, Eli's wife, John's wife, and several others, John's children or some of them, one of whom then read the will, were present. John brought the box out of another room. John opened the box. Valentine brought the key there and laid it on the piano. John hunted in it for the will. Then I got up and was going to walk there to the box. Then John held his two hands over the box, and said, 'here nobody has any right to hunt, except we, for the will.' Then I went back to my chair and sat down. Then John hunted in it, for the will. Then Valentine reached into the box too, and took out some papers— writings. When he drew it out, it was the deed, parchment it was, from George Emig to father for the place that father bought. So they said, I didn't look in it. Valentine said so. He had it nearly open the whole width and looked in it a little while. Then Eli went there and said he should give it to him once, and he did. Then Eli sat down and looked in the deed, what he wanted to see. Then Valentine took out the same pack again, and pulled out a new paper and opened it pretty large, and still looked in it, but when Valentine was taking out the papers, John said he should let them be. Valentine then looked over it a little yet, and then folded it and put it back. Then John found the will. That new paper was folded like a deed. It was something larger than a sheet of foolscap, but he hadn't it fully open. I say this was a new paper, because the others were old papers. I didn't examine it or I could have told. These things were then put back in the box, and the will was then read. That I believe was all that there was there then. I was present afterwards at my brother John's, when the appraisement was made. I don't remember how long afterwards. The box was opened then in presence

of the appraisers. John produced the box again. I don't know whether one of the appraisers opened it or not, but I think John did. Then the appraisers searched through the papers and appraised what they had to appraise. I was about eight feet from the box, perhaps not quite so far, sitting back, while the appraisers were searching through the papers. I took sharp notice when they took that same pack of papers, and that new paper was not in any more. No person said anything that I heard at that time about that paper. Mr. Diehl was there. I can't remember whether Mr. Diehl said anything at that time about that paper."

On cross-examination :—

" I was by when my brothers, and sister and I, and others were together when the will was read, and my brother John said, holding his hands over the box—' nobody has a right but us to search for the will.' The brothers were all there, Eli's wife, John's wife, Sarah, and some of John's children, but I don't know how many of them were there. They were all near enough to hear it. The box was locked again. I don't know who held the key then. Valentine brought it there. When the appraisers were there, John brought the box out, but I don't know who brought the key. I don't know how many papers were in the pack that Valentine took out. I didn't count them. The new paper I spoke of had no mark on it that I could know it again. I was too far off—I couldn't see a letter."

The court instructed the jury to find for the defendant.

The verdict was for the defendants.

The plaintiffs took a writ of error, assigning for error the rejection of their offers and directing a verdict for the defendants.

*H. L. Fisher* and *W. C. Chapman,* for plaintiffs in error.—It is conceded that preliminary to proving the contents of a deed its existence must be proved : McReynolds *v.* McCord, 6 Watts 288. A party must begin somewhere. If the deed had been produced, proof by the subscribing witness would have permitted it to go to the jury : 1 Greenl. Ev. § 569. The existence of the deed and notice to the opposite party to produce it laid the foundation for secondary evidence of its contents : Milliken *v.* Barr, 7 Barr 23 ; 1 Greenl. Ev. § 560 and in note 3 ; Sharpe *v.* Lambe, 3 P. & D. 454 ; Smith *v.* Sleap, 1 C. & K. 48. Very slight evidence will raise the presumption that the instrument is in the opposite party's possession : Henry *v.* Leigh, 3 Camp. 499 ; Harvey *v.* Michell, 2 M. & Rob. 366 ; Robb *v.* Starkie, 2 C. & K. 143. The slightest evidence tending to prove execution entitles the instrument to go to the jury : Hamsher *v.* Kline, 7 P. F. Smith 397 ; 2 Greenl. Ev., § 295. If a witness acknowledges attestation, primâ facie what he has attested has taken place in his presence : Sigfried *v.* Levan, 6 S. & R. 308, and this is for the jury :

[Diehl v. Emig.]

Sheppard's Touch. 54; Campbell v. Hall, Cowp. 204; Lesher v. Levan, 2 Dall. 96; Piggott v. Holloway, 1 Binn. 442; Critchfield v. Critchfield, 12 Harris 100. The deed might be returned to the grantor for any lawful purpose: Pringle v. Pringle, 9 P. F. Smith 281. After execution and delivery the deed could not be revoked: Worrall v. Jacob, 3 Merivale 256. The grantor's declarations as to the plaintiffs' title are evidence: Lingenfelter and Ritchey, 8 P. F. Smith 485; Reed v. Dickey, 1 Watts 152; Union Canal v. Young, 1 Whart. 410; Brown v. Bank of Chambersburg, 3 Barr 187. Less than express proof of delivery will suffice: Long v. Ramsey, 1 S. & R. 72; Powers v. McFerran, 2 Id. 44; Gibblehouse v. Stong, 3 Rawle 437; Bassler v. Niesly, 2 S. & R. 354; Moore v. Pearson, 6 W. & S. 51; Andrews v. Fleming, 2 Dall. 93; Weidman v. Kohr, 4 S. & R. 174; Hiester v. Laird, 1 W. & S. 249; Steward v. Richardson, 2 Yeates 89; Dow v. Jewell, 18 N. H. 340; Duffey v. Presb. Cong. of Bellefonte, 12 Wright 46. A court of error will inquire into the sufficiency of introductory evidence: Porter v. Wilson, 1 Harris 648; Lee v. Lee, 9 Barr 169. Everything is presumed *in odium spoliatoris:* Young v. Holmes, 1 Strange 70; McReynolds v. McCord, 6 Watts 290. The plaintiffs were witnesses as against Moul: Long v. Bailie, 4 S. & R. 222; Gibblehouse v. Stong, *supra.* Under the Act of 1869 Mrs. Diehl was competent to prove the loss of the deed.

*V. H. Keesey* and *J. L. Mayer,* for defendants in error.— The delivery of a deed is to be proved by parol, as part of the *res gestæ.* Independently of the act done in the delivery of the deed, the parol evidence would not be admissible: Hale v. Hale, 8 Conn. Rep. 49; Hannah v. Swarner, 8 Watts 9; Van Amringe v. Morton, 4 Whart. 387. A deed may exist undelivered as a mere writing, referred to in a will, or otherwise, for a collateral purpose, without its having had any operation as a conveyance of title: Thompson v. Lloyd, 13 Wright 129; 3 Washburn on Real Prop. 270.

Deeds made and retained to operate only at the death of the grantor are of a testamentary character, and may never take effect if the donor changes his mind: Stillwell v. Hubbard, 20 Wend. 44; Frederick's Appeal, 2 P. F. Smith 338; Perry v. Scott, 1 Id. 119; Maynard v. Maynard, 10 Mass. Rep. 456. Slight evidence of delivery is available only when the deed is produced: Porter v. Wilson, 1 Harris 641.

A son's possession of land of the father, and exercising all the acts of ownership, does not show that the father has parted with his title: Ackerman v. Fisher, 7 P. F. Smith 459; Eckert v. Mace, 3 Penn. R. 365; Poorman v. Kilgore, 2 Casey 372; Harris v. Richey, 6 P. F. Smith 395; Hugus v. Walker, 2 Jones 173; Toe v. Toe, 3 Grant

[Diehl *v.* Emig.]

74. In Brown *v.* Bank of Chambersburg, cited on the other side, the evidence was admitted because the declarations were written and made in the usual course of business: Welsh *v.* Barrett, 15 Mass. R. 380; Welsh *v.* Langfield, 16 M. & W. 516, and note in 1 Smith's L. C. 394.   Evidence of loss is to the court alone: Jackson *v.* Frier, 16 Johns. 195; Starkie's Ev. 531, in note by Sharswood. Requiring the best evidence is peculiarly strict in case of a lost deed: Kerns *v.* Swope, 2 Watts 79; Metcalf *v.* Benthuysen, 3 Comstock 424; Hale *v.* Hills, 8 Conn. 42.   The deed alleged was a gift, and should require as much proof at least as a deed for a valuable consideration: Pringle *v.* Pringle, 9 P. F. Smith 281; Frederick's Appeal, 2 Id. 342; Kreider *v.* Boyer, 10 Watts 54.   The plaintiff under such deed should prove that it was not revocable: Coutts *v.* Ackworth, Law Rep. 8 Eq., July 1869, p. 558.

[During the argument Sharswood, J., referred to Blight *v.* Shenk, 10 Barr 290.]

The opinion of the court was delivered, May 12th 1870, by

THOMPSON, C. J.—It is elementary doctrine that the contents of a deed of conveyance lost, destroyed or suppressed, may be established by parol evidence in an action of ejectment, when its existence as a valid instrument has first been satisfactorily proved: McReynolds *v.* McCord, 6 Wright 288.   The effect of such proof is of equal force in sustaining the title of the grantee as if the deed itself had been presented.   This is so *ex necessitate rei*, otherwise titles might be defeated by fraud or accident, without fault on part of the vendee, and in disregard of the consideration for the conveyance.   A rule like this would be so obviously unjust that it could not exist in any civilized land.   A near equivalent of such a rule, would be any rule which should render such proof impracticable by technical requirements, or to the order of proof; such for instance as the requirement of perfect proof in the theory of a first step taken before a second should be attempted.   All competent evidence in such a case should be received when offered, whether in logical sequence or not, especially if offered to be followed by what would make out a complete case if believed.   When the testimony is in, it is the duty of the judge to inform the jury what the law requires to be extracted from the body of it in order to make out a good and valid case in law, and what effect a failure to do so would have.   A party must begin with his proof somewhere; and where, is less important a great deal than its completeness.   A judge will look at the latter with great care as being of the very essence of the contest, and at the former as a desirable result rather than an essential one.

We think the first offer of the plaintiffs below should have been received.   It was not only orderly but essential.   It went to prove

[Diehl *v.* Emig.]

the drawing of a deed by a scrivener at the request of the grantor, John Emig, Sr., for the land in question to his daughter Sarah, and to establish its execution and delivery to her. The witness saw it after he had drawn it as requested; and it was completely executed by the grantor's signature in the presence of a witness, and was duly acknowledged before a magistrate. It was produced by the grantor, it is true, but simply to obtain what he supposed was necessary in order to make it valid as a complete conveyance. The signatures of the witnesses, and. more especially the official certificate of the magistrate, attested that the deed was executed and had been delivered. "Signed, sealed and delivered," was the solemn statement of the grantor, formally acknowledged before a magistrate, and admitted to the witnesses. In Blight *v.* Schenk, 10 Barr 285, it was held that such circumstances, unaccompanied by any fact which would countervail their effect, would establish a primâ facie case of due execution, including delivery, and call upon the other side to rebut their effect by proof of non-delivery. This view was overlooked by the learned judge below; and not only were these facts thought to be no evidence of delivery, but the accompanying proffered facts set forth in the offer were held to be no aids in the establishment of the material fact. The auxiliary proof, as it may be called, not only strengthens the presumption of delivery of the deed arising from its acknowledgment, but was itself strengthened by that fact. It was offered to show acts and declarations of the grantor, in and out of the presence of his daughter, in exact accordance with the effect of his conveyance, and furthermore how he happened to have possession of the deed. He declared the land hers—told his tenant in effect to attorn to her; told him and others that she owned the land; and he acted as her agent in leasing the farm and collecting rents for her. He took charge of her papers and money to keep for her, as he declared, and at her request, during her life. We are to consider all this as if it had been proved, because in its identity and unimpeached form the court refused to hear it, on the ground that it was inherently insufficient to tend to prove an execution and delivery of the deed. We discharge our duty in this review by simply holding, as we do, that all this was competent testimony, and, if believed, important evidence for the plaintiffs for the purpose for which it was offered, without applying to the features of the case in hand, or to any special features that may be in it—that will be done by the court and jury, aided by counsel when it is re-tried. This assignment of error is therefore sustained.

That portion of this offer containing the facts about the tin box, and the declaration about its containing his daughter's writings and money, and the acts and doings of the executors in regard to it, together with the offer of testimony contained in the

[Diehl *v.* Emig.]

third bill of exceptions, were undoubtedly evidence not only as being the acts and declarations of the executors to whom the box and its contents came, and the parties to the action, as raising some grounds to infer fraudulent management, and to suppress the truth, but also to charge spoliation of the deed in question upon them, especially as the offer was also to show that they refused to produce the box and its contents as it came into their hands on notice to do so. If a jury should be convinced of the spoliation, it would be their duty to infer anything in favor of the deed as against the spoiler. I do not limit the testimony to this view alone. It may be important in other aspects ; certain it is it ought to have been received. As George Diehl, the husband of the grantee in the deed, will probably be a competent witness for the plaintiff in another trial, under the provisions of the Act of 1870, to prove what is proposed to be proved by him on the last trial, the scope of these offers will be more distinctly apparent. We think the fourth assignment of error is also sustained, independently of this consideration.

There seemed to be some appearance of an idea in the mind of the court below, that the ground of the controversy assimilated itself to a case of parol sale, and hence declarations of the grantee could not be given in evidence. The evidence was not to prove a grant or sale by parol, but the existence of a deed containing the terms of a grant. The factum of a grant was not proposed to be proved—but the instrument containing it, and then the contents would show the grant, and the case would not be within the Statute of Frauds and Perjuries. The existence and loss of the deed was a fact *in pais*, to be proved like any other fact; of course its nature would require clear and full proof of the fact, but this would not exclude the declarations of the grantor, especially when corroborated by actual proof of the existence of the deed at one time.

We are of opinion that the other bills of exceptions contain no error as to the rejection of the testimony of the plaintiffs below. As the law stood the husband was not a competent witness, although he will be, we think, under the act above referred to, to prove anything occurring since the decease of the decedent, and that was what was proposed to be proved by him. The wife was incompetent under the Act of 1869, and will be under the Act of 1870, to prove what was proposed to be proved by her at the last trial. These errors are therefore not sustained; but the judgment must be reversed for the reasons given above.

Judgment reversed, and *venire de novo* awarded.