# Richardson, Appellant, *v.* Morris.

*Ejectment—Defenses—Purchase of outstanding claims.*

An owner of land may fortify his possession by purchasing outstanding claims and procuring as many conveyances as he deems sufficient, and when it is attempted to eject him he may defend under any or all of the titles which he has thus acquired.

*Evidence—Parol evidence—Written article of agreement—Lost paper.*

Where a written article of agreement has been lost, it is competent to prove its contents by parol.

*Ejectment—Evidence—Conflicting testimony—Question for jury.*

In an action of ejectment testimony as to the location of the line between the properties of the litigants, according to the various conveyances under which the parties claimed, was conflicting. There were no ancient monuments upon the ground. The surveyors who testified in the interests of the parties, respectively, had attempted to locate the line by measuring

from monuments located some distance from the property, and the results were not the same when different monuments were selected. *Held*, that the case was for the jury.

Argued Jan. 19, 1904. Appeal, No. 26, Jan. T., 1904, by plaintiff, from judgment of C. P. Lackawanna Co., Nov. T., 1900, No. 555, on verdict for defendant in case of H. R. Richardson v. Morris V. Morris. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Ejectment for land in the second ward of the city of Scranton. Before EDWARDS, P. J.

At the trial the following offer was made by defendant :

The counsel for the defendant propose to prove by the witness on the stand that in 1870 he was the owner under a land contract, for which he has made diligent search and cannot now find, but which he is prepared to state the contents of, of the whole of the land in the so-called Knickerbocker plot, including the land of Richardson and Morris both, and the land in dispute ; that he sold under contract to Davenport thirty-five feet in the rear ; that a barn was constructed thereon up to that line ; that Davenport went into possession of the lot now occupied by Morris under the contract with the witness which is now lost, but which he is prepared to state the contents of, having a frontage of thirty feet in front, thirty-five feet in the rear ; that the hotel and the barns were then standing thereon just as they are to-day. To be followed by evidence of the court records showing a levy and sale of the interest of the witness in this contract, and the purchase by Howell, Bevan and King of his interest under this contract, in 1874, just before the contract between Howell, Bevan and King and Davenport in August, 1874, and to also show that after Davenport obtained this contract from Howell, Bevan and King he continued in the possession of the lot of which he took possession under his contract with the witness, and of the size which they had agreed upon, namely, thirty feet in front and thirty-five in the rear, and occupied the buildings then standing upon the same until he was sold out by the sheriff under the proceedings already offered in evidence.

Mr. Price : The counsel for the plaintiff object to the offer

because it is an attempt by parol to contradict a deed of King and others to Davenport; it is immaterial and irrelevant.

The Court: The objection is overruled and the evidence is admitted. Of course the question of the effect of some of the testimony will be for the court, but I think it is admissible. Exception. [1]

Joseph Davenport, a witness on the stand: " Q. Was there any change in the size of the lot that you took possession of after you made your contract with Howell, Bevan and King, and the size of the lot that you took possession of under James Armstrong? A. No, sir; all the same lot."

Mr. Price: That is objected to, and we move to have it stricken out, because it is in contradiction of the Howell and King deed.

The Court: I overrule the objection. I think they have a right to show what time they went into possession. Exception. [2]

Joseph Davenport, a witness for plaintiff, on the stand.

Mr. Price: The counsel for the plaintiff propose to prove by the witness on the stand that while there was a sheriff's sale of the property in 1876, he (the witness) still continued to pay the interest on the loan to Beaumont; that the agreement between him and Beaumont was that the property was to be deeded to him on payment of the principal; that he remained in possession as the owner up to 1891.

Judge Vosburg: We object to the offer as irrelevant, incompetent and immaterial, the offer being to show merely a verbal agreement which could not affect the title in any way.

The Court: I will sustain the objection.

Exception. [3]

Mr. Scragg: The counsel for plaintiff propose to prove by the witness on the stand that he is the party who built the hotel now occupied by Mr. Morris; that at the time he built it he was not sure where the lines of his land were; that after he built it he ascertained that he was over—that the building that he erected was over on the Richardson land; that thereupon he and Richardson agreed to adjust the matter by the witness taking a lease from Richardson of this land where the building was over the line of the witness's property; that at the time Richardson went into possession of his land as proved in this case,

he had a conversation with the witness on the stand claiming that the hotel building now occupied by Morris was over on the Richardson land.

Judge Vosburg : The counsel for the defendant object to the offer first, as not rebuttal; second, as repetition; third, as being incompetent, both conversations being alleged to have occurred at a period when the witness had no interest or title to the land, or any part of it. It is objected to generally as incompetent, immaterial and irrelevant.

The Court : This substantially is the same offer as has already been ruled upon. The objection is sustained.

Exception. [4]

The court charged in part as follows :

[This jury can evidently see that the dispute here is as to the exact line between Mr. Richardson's and Mr. Morris's land, and where is the true location of that line ? Has Mr. Richardson all the land that he is entitled to by his deed ? Has Mr. Morris all the land that he is entitled to by his conveyances ? If we take the testimony of Mr. Stevenson it may be that the jury would be justified in deciding that the Morris land encroaches upon the Richardson land and that the contention of the plaintiff is correct in this case, and that the plaintiff ought to have a verdict at your hands for the land as described in the præcipe and in the writ in this case. If, on the other hand, you should consider Mr. Dunning's testimony and some other testimony of a like character, outside of the question now of adverse possession, you would have the right to come to the conclusion that Mr. Morris has no more land than he is entitled to by law and his title papers.] [5]

[The evidence of title on both sides has been offered to you. The title of Mr. Morris, the defendant, is the first in the order of time so far as it comes from a common source. According to the deeds, the old deeds, Mr. Morris or the parties who owned the land before him had thirty feet in front. It does not give the distance by quantity in the rear, it does not say thirty feet in front and thirty feet in the rear, but it gives certain courses and distances, and the contention of the plaintiff in the case is, that carrying out the calls in the courses and distances, it must necessarily for mathematical reasons be only

thirty feet in the rear.   At any rate it is in evidence that the first title, so far as the defendant is concerned, gives him thirty feet in front, and then the Richardson title gives all that the grantor had left whatever it was—I forget now whether the distance is given in the deeds or not, eighty-five feet—he is entitled to all the land that is left and belonged to his grantor. It is often difficult to decide from the papers themselves how much land a person takes, and you may find that difficulty in this case; therefore surveyors are called in, and they get possession of the deeds and they go upon the ground and they make a survey, and they look upon the ground and see if they can find any monuments so as to enable them to ascertain where the true line between the land in question is, or where the lines are of that land and of contiguous land and all land that is in the same warrant or that can be surveyed back to the same starting point.   That is the business of a surveyor, first to ascertain the lines of lands and the quantity within the lines, and the way he does that is to make the conveyances, tracing them backwards or forwards from the commonwealth down or up to a certain point and to locate the ground and to see if they can find any land marks of any kind, any monuments either natural or artificial.]  [6]

[You notice the different standpoints from which the two main surveyors have approached the consideration of the dispute in this case.   You notice that Mr. Dunning takes a point on West Market street in the center of the street twenty-three feet from the side of West Market what is known by us now as the curb line of the street and not from the building line, and he runs down his line along what is known as the Dunning property, that is the property between the Richardson property and West Market street, and by starting from that point according to the figures that he has collected together and according to his best judgment, what is the result?

The result is that there is a difference of four or five feet between him and Mr. Stevenson, and the result is important, because if Mr. Dunning's starting point is right and if his deductions are correct as given before you, it leaves Mr. Morris's land just as it is and would justify the jury in coming to the conclusion that there has been no encroachment or that there is no encroachment upon the land of Mr. Richardson; that is,

that each party has all the land that he is entitled to under all of their conveyances.   I understand also that Mr. Dunning started from another recognized corner, which I think is one of the corners of the old certified.line of one of the lots of Providence township, and wormed upwards in a northerly direction, and while his testimony was not absolutely clear upon that point, as far as I understand it, it was that he had taken into consideration the deeds of the different owners along the line, working up in that direction and that he arrived at the same result.   Now, take again Mr. Stevenson's testimony; and I must say that the surveyors in this case as we find surveyors generally are, but especially the witnesses who have been here, are extremely bright and intelligent and know what they are talking about—Mr. Stevenson goes upon the stand and comes to a different conclusion.   He takes the old conveyances, he takes the Cottrell deed, the Knickerbocker deed and takes all the conveyances from the starting point to Mr. Richardson and to Mr. Morris, and he comes to the conclusion as stated by him in his testimony and as transcribed by him upon his map, that the contention of the plaintiff is correct, and that Mr. Morris's land encroaches to a more or less extent upon the land of Mr. Richardson, the amount, of course, I have already stated as it is given upon the map.] [7]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions ;  (5–7) above instructions, quoting them.

*S. B. Price* and *John F. Scragg*, for appellant.

*A. A. Vosburg*, with him *Chas. W. Dawson* and *D. J. Davis*, for appellee.                                        .

OPINION BY PORTER, J., October 17, 1904 :

An owner of land may fortify his possession by purchasing outstanding claims and procuring as many conveyances as he deems sufficient, and when it is attempted to eject him he may defend under any or all of the titles which he has thus acquired.   The mere fact that Joseph Davenport, the predecessor in title of the defendant, had accepted a conveyance from

Howell, Bevan & King, did not preclude the defendant from showing that Davenport had an older and better title, acquired through his article of agreement with James Armstrong. The written article of agreement between Armstrong and Davenport having been lost, it was competent to prove its contents by parol: Diehl v. Emig, 65 Pa. 320; Hemphill v. McClimans, 24 Pa. 367; Logan v. Gardner, 136 Pa. 588; Gorgas v. Hertz, 150 Pa. 538. The first and second specifications of error are without merit.

The rejection of the offers of testimony which are the subjects of the third and fourth specifications of error worked no injury to the cause of the plaintiff, whether the evidence was competent or otherwise. The purpose of both of said offers was to lay ground for the introduction of evidence as to a conversation between Davenport, the witness, and Richardson, the plaintiff. This witness had already been examined and testified, notwithstanding the objection of the defendant, as to the very matter with regard to which it was again proposed to interrogate him. He had testified that after Richardson had the property surveyed he spoke to the witness about his being over the line, whereupon the witness said: "If I am I will make it right to you one way or the other. I told him I would give him a couple of feet at the back for a foot in the front." But there was nothing in the testimony which could be tortured into an admission that Davenport's possession extended, or that he believed it extended, over the true line between the properties. He testified that Richardson asked him something about accepting a lease for the strip of ground, but that he, Davenport, had agreed to nothing; "I said I will get it surveyed and we will make some settlement about it; that is what I told him." Davenport never got the property surveyed, and there never was any agreement between them. The third and fourth specifications of error are dismissed.

The testimony as to the location of the line between the properties, according to the various conveyances under which the parties claimed, was conflicting. There were no ancient monuments upon the ground. The surveyors who testified in the interests of the parties, respectively, had attempted to locate the line by measuring from monuments located some distance from the property, and the results were not the same

when different monuments were selected. The appellant has not printed the deeds which were ·offered in evidence; the article of agreement between Howell and others and Joseph Davenport, which is printed in the appendix, would not have warranted the court in declaring as matter of law that the line between the property of the defendant and that of the plaintiff was parallel to the line between the former and lands of Vaughn, for that paper gives the bearing of only one line in the entire description; we certainly would not be warranted, upon such a presentation of the case, in determining that the action of the court below in submitting the question of the location of the line to the jury was erroneous. The instructions under which this question was submitted to the jury were substantially correct, and all the assignments of error are dismissed.

The judgment is affirmed.