## JONES v. BROWNFIELD.

1. Declarations, at the time of doing any act, uncertain as to its effect, admissible to prove intent.
2. Where an improvement was made by a tenant, who was employed by his landlord, as a charcoal-burner on the land; the declarations of the landlord, that he intended to settle and improve the land, are admissible.
3. Judgment creditor of one who may be insolvent is a competent witness for him, in a suit for the recovery of land.
4. Whether an improvement was made for the purpose of a continued residence, &c., is for the jury.

5. If the settlement was with a design to use the land for making charcoal, or for cutting timber, it would not give an improvement right.

6. Settler entitled to a tract in a reasonable shape about his improvement, even though he may not have marked the lines or boundaries.

ERROR to the Common Pleas of Fayette county.

This was an ejectment, by Brownfield, tried at a special court before Grier, J., for one hundred and one acres, part of a tract claimed under a settlement and improvement by Victor, of which the boundaries had not been designated, and purchased at a sale by his administrator for payment of debts.

The defendant held under a warrant. The validity of the settlement, with some points of evidence, were the questions here.

The plaintiff first showed an ejectment by Jones, in which he was admitted as landlord, and a verdict and judgment for defendant, affirmed in this court. It appeared that after this the tenant left the land and Jones entered.

To support the settlement right, the plaintiff proved that Victor was in possession, claiming title, about fifteen years before his death, in 1835, and erected a house, in which he placed a tenant, who cut wood for his forge, in the neighbourhood ; another house was built, since dilapidated ; a garden cleared around both the cabins about a quarter of an acre in extent. In this cabin a tenant was placed, who paid rent. Turnips, corn, &c., were raised for the use of the families ; he also proved declarations by Victor, of his intention to clear part of the land for a meadow, and build a saw-mill, and move on the land ; also that he planted some peach trees. After Victor's death, the tenant moved out, and his administrator, in a few weeks, put another in, the other house being then torn down. Whether the tenants immediately succeeded each other, in Victor's lifetime, was not positively shown. There was evidence of his instructions to his tenants, to preserve the wood fit for timber, and to coal the tops, &c., only.

Plaintiff then proposed to prove that Victor, in his lifetime, intended to take out a warrant for this tract, the value he set upon it, and the improvements he proposed to make. Defendant objected, but the court admitted it, saying, "A man's intentions may, and can be known, only by his declarations or his acts ; if his acts are equivocal, or capable of different constructions, his declarations may be given in evidence to explain them. It has been proved that Victor had tenants on the land, and cut the timber off ; whether it was his intention to take the land by settlement, or only to squat on it temporarily to plunder it of its timber, is (as is known from a former trial of this case, and repeated declarations of counsel) one of the leading points in the case ; most of the testimony hitherto received, without objection, has been to the same

point, and of the same character with that now offered." The objection was overruled, and exception taken.

The witness, on his voir dire, stated he was a large creditor of plaintiff, but did not think he would be insolvent. It might depend on how he should treat him. He could make him so. He had a judgment, which would be a lien on the land. It did not matter whether he recovered in this suit, so far as he, the witness, was concerned. He did not know what personal estate plaintiff had. Defendant. objected, that the witness was interested, which was overruled, and exception taken.

The intention of Victor to take out a warrant, as well as to erect a saw-mill, was then proved.

The defendant's title was under a warrant in 1836, surveyed in February, on the return to which, it was said, there was a small house on the land, in which Jones (who was shown to have been a tenant of Victor) had lately moved, and a small piece of ground, cleared, perhaps, for a garden, but not fenced, and a request for a caveat by the administrators of Victor, as they claimed the land on behalf of his heirs. Evidence contradictory of Victor's intention to move on the property was given.

The defendants asked the court to instruct the jury,

First, That according to all the evidence given in this case, Philip Victor, in his lifetime, never made a settlement upon the land in dispute.

Fourth, That if the jury believe the erection of the two cabins was done for the convenience of his ironworks, and to facilitate the cutting of timber and coaling it for his works, such erections, and the occupancy thereof by his hands, employed, not in agriculture, but as labourers at his ironworks, does not constitute a settlement within the meaning of the law, and gave Victor no pre-emption right, as against the Commonwealth, or any of its citizens.

Sixth, That the plaintiff, having purchased after the warrant and survey of the defendant, is a purchaser with notice of defendant's title, and has no equity as against defendant, other than that possessed by Philip Victor in his lifetime.

His honour, after stating the principles of law relating to the acquisition of title by improvement in ordinary cases, and when made through a tenant, charged the jury:

" The intention of a person, taking possession of a piece of vacant land, must be judged of by the jury, both from his acts and his declarations. Was this settlement, made by Victor, an actual personal resident settlement, not a mere temporary squatting, without any view to hold the land, or of purchasing it of the Commonwealth; or did he erect these houses merely for the temporary accommodation of his wood-

choppers and coalers, while he stripped the land of the timber? Was it his intention, when he erected these houses, to make them permanent places of residence for his tenants or himself, or was it only to keep off others while he plundered the land of its timber? Did he intend to keep the land for agricultural purposes, the support of a family, and to obtain a title from the Commonwealth, or only to hold a temporary possession, and when he had used all the wood for his iron-works, and the timber for his saw-mill, abandon the land as worthless? It is not necessary, that any given quantity of land be cleared and cultivated; the building a house, occupying it by tenant, with a garden spot, if half an acre, used for corn and vegetables for a family, will be sufficient, if the intentions of the settlement were of the bonâ fide character I have stated. Perhaps the value of the land may consist in preserving the timber trees, and not in clearing a great portion of the land. If you find that Philip Victor took this possession to keep off others, and to strip the land of its trees and timber for the use of a forge and saw-mill, without any intention of making it a place of abode for himself or tenant, or the means of supporting a family by cultivation of the soil, then Victor gained no title to the land, and of course the plaintiff cannot recover. But if you believe he had not such intention, but has shown, by his conduct and declarations, that he intended a bonâ fide claim to the land, in the manner I have stated, then his title, and that of the plaintiff, would be older and better than that of defendant, if you believe the testimony of the witnesses. And this brings us to another subject of inquiry—Can the plaintiff recover without showing a survey, or some specific demarcation of the boundary and extent of his claim? I think that (in case of lands lying east of the Alleghany river) he may, under the peculiar circumstances of the case, if, on the other point, you think his claim valid. When the defendant, Jones, took out his warrant, or at least when he had his survey made, the tenant of Brownfield or Victor was in possession. The former ejectment, brought by Jones against Jennings, the tenant, admitted him in possession of the hundred acres surveyed and claimed by Jones, against which a caveat was entered. While the question is litigated, as to whether Jones had a right to have his survey accepted, he seizes the possession, and after Brownfield has obtained a verdict and judgment in his favour, as to the right, he is compelled to resort to this suit. Under these circumstances, if the jury believe, from the other testimony in the case, that giving the plaintiff his quantity of three hundred acres, in a reasonable shape around his original improvement, included the land in dispute, taking into consideration the survey, they may find for the plaintiff, if they think him entitled to recover in

view of the other circumstances of the case already noticed. If the jury find for plaintiff, they will have to assess the mesne profits. It is usual, in such cases, to allow the defendant for valuable and permanent improvements, when he has entered, claiming bonâ fide. In case of a sheer trespass, without pretence of title, the jury might be justifiable in making no allowance for improvements, and finding even exemplary damages. In this case the defendant has, at least, a pretence of claim, under his warrant and survey, and ought not to be subjected to a harsh rule of damages; but the jury will judge.

*Henniken* and *Dawson,* for plaintiff in error, cited 10 Serg. & Rawle, 293; 5 Watts, 16; 10 Watts, 428; 4 Serg. & Rawle, 502; 6 Id. 189; 5 Id. 289.

*Howell* and *Patterson,* contrà.—3 Watts & Serg. 530; 16 Serg. & Rawle, 193; as to the competency of the witnesses, 2 Rawle, 279; 9 Watts, 268.

BURNSIDE, J.—The first error assigned is the admission of Judge Ewing to prove that P. Victor, in his lifetime, intended to take out a warrant for this tract; the value he set upon it, and the improvements he proposed to make upon it. [His honour here stated the reasons given by the judge for admitting the evidence.] When we look into the paper-book and examine the evidence given, there was no error in admitting the evidence offered. The declarations of a settler, while he is making an improvement, have always been received. They were particularly proper in this case, as a principal point of the plaintiffs in error was to satisfy the jury that Philip Victor never had an actual bonâ fide settlement.

The second error assigned is the admission of Judge Ewing as a witness, on the ground of interest. [His honour then stated the evidence on the voir dire.] It is settled that a *remote, contingent,* and uncertain interest does not disqualify a witness. As a creditor of an estate, not in a course of liquidation, or an insolvent estate, is a competent witness for the administrator; where he stands in the same relation to the estate now, as he did to the debtor in his lifetime, and the probability that his testimony may be beneficial to himself, by increasing the fund out of which he is to be paid, is equally remote and contingent in both cases. Greenleaf's Evidence, 308. An annuitant under a will is also a competent witness for the executor in an action against him for the debt of the testator. Newell *v.* Davis, 5 Barn. & Ad. 368. I find no case going the length that the counsel for the plaintiff in error insists

on.   The witness is never excluded where the interest is so remote, uncertain, and contingent.

The third error assigned is in not instructing the jury, as requested, in the first, fourth, and sixth points of defendant's counsel.   [His honour stated them.]   The judge very properly answered that these points were matters of fact for the jury, under the principles already stated. In the general charge the judge had laid down the law with correctness and precision.   [His honour here stated the charge.]   Is this not a full answer to these points?   I cannot conceive that a more proper and perfect answer could be given in the case.

The last error assigned is, that the court erred in that part of their charge where they tell the jury, "that if they believe, from the testimony in the case, that giving the plaintiff his quantity of three hundred acres in a reasonable shape, around his original improvement, includes the land in dispute, taking into consideration the survey, they may find for the plaintiff."   If an actual settler is wise, he will designate his boundaries. If he makes a mistake and takes in surveyed land, and there is still more vacant, he can change his boundaries, so long as the land is not appropriated, and no one injured.   If he omits to circumscribe his boundaries, he is entitled to a reasonable vicinage, *to the extent of* the quantity he claimed, not exceeding two hundred acres in the old purchase.   In this case the evidence is, that Philip Victor claimed from one hundred and fifty to one hundred and sixty acres, and he particularly claimed both sides of the creek, and where Jones built the sawmill.   If Jones had laid his warrant outside of the one hundred and sixty acres, I think, under the evidence, Brownfield would have been held to that quantity, as that was the quantity he purchased at the Orphans' Court sale.   But Jones laid his one hundred acre warrant on the improvement, and the land claimed by Victor, and in the possession of Brownfield by his tenant.   This question was not raised on the trial, that any part of Jones's survey was outside of Victor's one hundred and sixty acres.   As the question was not raised by the defendant, and no injustice has been done by the judge in the general expression in the close of his charge, it is not a ground for reversal.

The judgment is affirmed.