## Stauffer's Estate

*R. P. Swank*, for accountant; *M. A. Kilker*, for devisees.

GANGLOFF, P. J., January 15, 1934.—Elmer G. Stauffer died on March 14, 1932, having first made his last will and testament, which was duly probated in the office of the Register of Wills of Schuylkill County on March 31, 1932, and on the same date letters testamentary were granted thereon to the accountant.

The decedent left neither spouse nor issue to survive him. His next of kin are collaterals.

The account shows a balance of principal arising from personal property of $96.48 and a balance of income arising from the same source of $82.23, or a total of $178.71, against which there are no claims of creditors. In addition to the personal estate shown in the account, the decedent died seized of an undivided one-half interest in certain real estate situate in the Borough of Ring-

town, this county, and the decedent in his said last will and testament disposed of both this real estate and the personal property, as hereinafter indicated.

The decedent in his will, after providing for the payment of debts and funeral expenses, disposes of his entire estate as follows: He first gives his entire estate to his sister-in-law, Nima D. Stauffer, providing she survives him; she predeceased him, and therefore this clause becomes inoperative. In case of the death of his sister-in-law, Nima D. Stauffer, before the decedent (she died before the decedent), he devises and bequeaths all his estate, real, personal, and mixed "to my sisters-in-law, Mrs. Fannie Richards and Mrs. Ida Barnhard, share and share alike and in fee simple, upon condition, however, that my said two sisters-in-law, Mrs. Fannie Richards and Mrs. Ida Barnhard, continue to provide a home satisfactory to me, where I am now living, up to the date of my death". The testator further provides: "3. If it should happen that my said sisters-in-law, Mrs. Fannie Richards and Mrs. Ida Barnhard, do not continue to provide, in a satisfactory manner, for my board and lodging, and also care and nursing while in ill health, to date of my death, in the home I now occupy, then and in that event I give, devise and bequeath all of my said estate, real, personal and mixed, to those entitled thereto under the provisions of the intestate laws of Pennsylvania."

The question now arises whether or not the estate disposed of by the decedent in the above clauses of his will vested in Mrs. Fannie Richards and Mrs. Ida Barnhard, or in the heirs at law.

In 1899, testator and his brother, L. D. Stauffer, erected a dwelling house upon two lots of ground situate in the Borough of Ringtown, acquired by them during that year as tenants in common. For convenience in reference, we shall call this property the Stauffer home. Testator was a single man and so remained until his decease. He and his brother occupied this dwelling until the death of the latter in 1927. The brother by will devised his undivided half interest in the property to his widow, Nima D. Stauffer, and testator and Nima D. Stauffer together continued to occupy the dwelling until the latter's death on March 31, 1929. About the time of the death of Nima D. Stauffer, her sister, Mrs. Fannie Richards, also known as Mrs. Fannie Walsh, moved into the dwelling with testator and they lived together there, with Mr. Walsh, Fannie's husband, for about a year, according to the testimony. Mrs. Ida Barnhard, another sister, did not occupy the dwelling with testator at any time, nor did she occupy it after decedent left.

About a year after Nima's death, testator left the Stauffer home and moved to the home of Samuel Long, the accountant, where he remained for a period of approximately 2 years until his death.

Testator executed his will on January 17, 1929, which was about 2 months before his sister-in-law, Nima, died, and the language of his will would indicate that Fannie Richards and Ida Barnhard were then providing a home for him, for he uses the words "continue to provide" in referring to them. The evidence, however, does not show that they were then providing a home for him, although their sister, Nima, was; at least testator and Nima D. Stauffer lived together in the Stauffer home.

As already indicated, Nima D. Stauffer held an undivided half interest in the Stauffer home originally acquired by testator and his brother, and the testator owned the other undivided half. Nima, in her will, gave to Elmer G. Stauffer, her brother-in-law, and to her sisters, Fannie Richards and Ida Barnhard, the right to live in this home and use the contents thereof during their respective lives, and she also gave them, share and share alike, for the same period of time, the net income from her estate. In a codicil to her will, however, she provided

that "if it should happen that my brother-in-law, Elmer G. Stauffer, does not find it satisfactory to occupy and enjoy my home and contents thereof after date of my death", then he is to receive $30 per month in addition to his share of the net income from her estate, and this $30 per month is to be deducted from the sisters' share of the net income. The terms of this codicil were carried out without any objection on the part of the sisters. The income balance shown by the first and partial account filed in the Nima D. Stauffer estate was awarded by this court, Wilhelm, P. J., to Elmer G. Stauffer, and later on the sum of $533.85 was paid by the Nima D. Stauffer estate to the Elmer G. Stauffer estate, under the provisions of the codicil to her will, and this $533.85 forms part of the assets accounted for in the account now before us. Neither Fannie Richards nor Ida Barnhard objected to these payments. Counsel for accountant now contends that these payments made under the terms of the codicil to Nima G. Stauffer's will are evidence tending to prove that Elmer G. Stauffer found it unsatisfactory to live with Mrs. Richards in what Nima called "my home" (the Stauffer home), and that therefore it also follows that Mrs. Richards and Mrs. Barnhard failed to continue to provide a home satisfactory to him under the provisions of his will. We cannot entirely subscribe to this view. The situations are somewhat different. Under the Nima D. Stauffer will, the only criterion was whether or not Elmer G. Stauffer found it "satisfactory to occupy and enjoy my home and contents". She did not specify any duties to be performed on the part of her sisters or either of them toward Elmer G. Stauffer. He could stay or leave, as he might choose. The matter was left entirely in his own hands. On the other hand, under his will, there were certain duties cast upon Mrs. Richards and Mrs. Barnhard. No such duties or any duties, for that matter, were laid down in the Nima D. Stauffer will. She no doubt felt that if her brother-in-law desired to live in another home he would be required to pay rent, or the equivalent of rent. He, of course, would also sacrifice the rental value of his undivided half interest in the Stauffer home, and this also probably entered into her calculations in fixing the amount at $30 per month. She probably assumed also that her sisters, or at least Mrs. Richards, would in any event remain in the home. It seems entirely logical and natural then that these sisters should not object to giving part of their income from the deceased sister's estate to help Elmer G. Stauffer, if he desired, to live elsewhere than in the Stauffer home; and this is so particularly because the will of Nima Stauffer specifically provides for a surrender on the part of the sisters of sufficient income to make up the $30 per month.

Mrs. Richards continued to live in the Stauffer home from the time her sister Nima died until Elmer G. Stauffer died, and thereafter; in fact, as we understand the testimony, she lives there now. She and her sister, Mrs. Barnhard, have a right under Nima D. Stauffer's will to occcupy the home as long as they live. Mrs. Barnhard has not exercised her privilege. Elmer G. Stauffer, speaking through his last will and testament, says in effect to Mrs. Richards and Mrs. Barnhard, I give you all my estate if you provide, in a satisfactory manner, board and lodging for me, also care and nursing while I am in ill health, in the Stauffer home, to date of my death. The duties or conditions are plainly stated, and the time during which these duties are to be performed also is definitely fixed. That time ends at the death of testator, but the duties plainly must be performed up until the date of testator's death. No citations are necessary to support the statement that a will speaks as of the date of death of the decedent, unless a contrary intention appear. Elmer G. Stauffer's will speaks as of the date of his death. There is nothing in his will to indicate otherwise.

In Finlay et al. v. King's Lessee, 3 Pet. 346, 374, Chief Justice Marshall

announces the rule with respect to estates on condition precedent and subsequent to be as follows: "There are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently; and the question is always a question of intention. If the language of the particular clause, or of the whole will, shows that the act on which the estate depends must be performed before the estate can vest, the condition is of course precedent; and unless it be performed, the devisee can take nothing." The conditions in the Elmer G. Stauffer will obviously are conditions precedent, to be performed in testator's lifetime.

The conditions to be performed having been fixed and the time during which performance is to take place likewise having been fixed, who is to decide whether the conditions have been performed? The will gives us the answer. In the very clause in which the testator devises his estate to Mrs. Richards and Mrs. Barnhard he states as a requirement that these two devisees "provide a home satisfactory to me"; not just a satisfactory home but a home "satisfactory to me". This language is not difficult to understand; in fact, its meaning is quite obvious. What was testator's idea of "home"? We gather from the will itself that "home" to him, as he used it, embraced board and lodging and care and nursing while in ill health. As to the building itself, he had a right to occupy that, not only as part owner but also as a life tenant under Nima D. Stauffer's will. Mrs. Richards and Mrs. Barnhard also had and have a right to occupy the home under their sister's will. Now, he says in his will that if Mrs. Richards and Mrs. Barnhard do not provide board and lodging for him, up to the date of his death, and care and nursing while in ill health, also up to the date of his death, in a satisfactory manner, in the Stauffer home, then his estate is to go to his heirs at law. Satisfactory to whom? Satisfactory to the testator, is the obvious answer, for in the former part of the clause he plainly says "satisfactory to me". When he uses the word "satisfactory" the second time, he uses the word in the same sense in which he used it in the former part of the clause. To say that a will devising an estate upon such conditions would be unfair or unjust will not avail, for one may dispose of his estate as he pleases, providing his dispositions are legal: Holbrook's Estate, 213 Pa. 93. No one contends that the disposition of his estate made by the testator here is illegal; nor is it illegal.

Was testator provided with a satisfactory home, board and lodging, care and nursing while in ill health, by Mrs. Richards and Mrs. Barnhard, up to the date of his death, in the Stauffer home?

Neither Mrs. Richards nor Mrs. Barnhard furnished decedent with board and lodging in the Stauffer home for approximately 2 years immediately preceding his death; nor did they, or either of them, provide care and nursing during any illness he may have had during that period. We know he had been ill at least for a short period before he died.

Why did decedent leave the Stauffer home? He had lived there since about 1899, first with his brother and his wife, and subsequently with his deceased brother's widow. Although he remained there these many years, he left in about a year after his brother's widow died. The home had changed, of course. Mrs. Richards conducted the home after Nima died, but decedent did not remain with her more than about 1 year. Why did he leave?

Two or three days before he left the Stauffer home for the home of Samuel Long, decedent told Daniel H. Mervine, a disinterested witness, that he could not stand it at the Richards' home any more; that Mrs. Richards did not get up to get his meals; that she would not talk to him; and that he was going to move. This witness also testified that decedent moved to Long's 2 or 3 days

after he made this declaration to witness. This testimony was competent to show motive, intent, or purpose: Bennett v. Hethington et al., 16 S. & R. 193; Jones v. Brownfield, 2 Pa. 55; Wanner v. Landis et al., 137 Pa. 61; Merigan v. McGonigle, 205 Pa. 321. To the same effect is the testimony of Mrs. Cecelia Stauffer and Joseph C. Stauffer, but we find that the latter two witnesses are heirs at law of decedent and therefore claimants under the will. We shall therefore ignore their testimony, but even so we still have the testimony of Mr. Mervine, as above stated. He impressed us as a man who told the truth, and his testimony stands uncontradicted. It is true we permitted Mrs. Richards to testify in rebuttal, under objection, and she testified that when decedent left the Stauffer home for Long's he stated to her that he had nothing against her, that she should not think ill of him, that he kept his key to the house, and that he visited her quite often after that and remained quite often for a meal.

This is an issue respecting the property of a deceased owner, and Mrs. Richards claims this property under the will of decedent. The heirs at law claim likewise under the will. Neither claims by devolution. Even if we say that the heirs claim by devolution, still Mrs. Richards would claim under the will. Both Mrs. Richards and the heirs at law would be incompetent under the Act of May 23, 1887, P. L. 158, sec. 5 (e): Schreckengost's Estate, 77 Pa. Superior Ct. 235. Then again, a claimant cannot make title in himself to a thing or contract in action by his own testimony of what occurred in the lifetime of the grantor or testator, unless made competent under the last portion of section 5 (e) of the Act of 1887, supra: Diehl et ux. v. Emig et al., 65 Pa. 320; Paschall v. Fels, 207 Pa. 71; Robinson's Estate, 222 Pa. 113; Weller's Estate, 247 Pa. 196; Phillips' Estate, 271 Pa. 129; or under the Act of June 11, 1891, P. L. 287; or unless made competent by being called as for cross-examination by the adverse party. Neither Mrs. Richards nor the heirs who were offered as witnesses have qualified as competent witnesses.

But let us assume, for the sake of argument, that Mrs. Richards' testimony is competent. She says that she kept a bedroom and continued to keep a bedroom for decedent, up to the date of his death; that he came to visit her; that he kept his key to the house; that he took a meal now and then at her home; that when he left he seemed to desire that she should not think ill of him. Taking all this as verity, there is not one word that is contradictory to the declarations made by decedent to Mr. Mervine. The declarations made to the latter by decedent obviously mean that decedent was not satisfied with his home with Mrs. Richards. Of course, he did not tell Mrs. Richards, in words, that he was not satisfied; but certainly his leaving would indicate that he had some reason for so doing. He stated that reason to Mr. Mervine, a disinterested individual and a friend of decedent. Let us also assume that Mrs. Richards kept a nice home, as was testified by Mrs. Minnie Zulick, a disinterested person. Can we conclude from this that the home was satisfactory to decedent? We think not. The testator made himself the sole judge as to whether the home was satisfactory. This might be unfair to Mrs. Richards, but it was not illegal.

Shortly before decedent died, he told Mrs. Minnie Zulick that he thought as much of Mrs. Richards as he did of his sister-in-law, Nima D. Stauffer, and on another occasion, after he moved to Long's, that he liked Mrs. Richards and had nothing against her. He also told Mrs. Gertie Reichard about a week before he died that Mrs. Richards had sent him a Christmas present; that he was home-sick for his sister-in-law, Nima; that witness said to him: "You should have stayed at the home", to which he replied: "I made things right for Ida and Fannie". Henry Dresher, Nima Stauffer's brother, also testified that decedent

took supper at the Richards' home on a Sunday in November 1931, while witness and his family were there, and decedent then conducted himself as though he were part of the family.

If decedent actually felt that Mrs. Richards would give him the kind of home he described in his will, why didn't he return to her?. Certainly there is nothing in this case to show that she would not receive him or permit him to stay. The statements made by him to Mrs. Zulick and Mrs. Richards surely are not sufficient, in the face of decedent's failure to return, to show that he released Mrs. Richards and Mrs. Barnhard of the conditions set forth in his will. What did he mean when he said to Mrs. Reichard that he "made things right for Ida and Fannie". He may have meant exactly what these words plainly import. He had made things right for them in his will, but he made them right according to his own plan. That plan is plainly indicated in the will, and our duty is first to ascertain his intention, and second to ascertain whether that intention has been carried out. If he desired to relieve Mrs. Richards and Mrs. Barnhard from performance of the conditions laid down in his will, why didn't he change his will after he made his home with Samuel Long? He had 2 years in which to make such a change. Isn't is logical for us to assume that he desired to hold these devisees to the performance of the conditions named in the will? It is true they knew nothing about the contents of his will, and looking at the question from that standpoint it may seem unfair to the devisees. However, as already stated, testator had a right to make the will he did make.

Decedent had knowledge for practically 2 years that neither Mrs. Richards nor Mrs. Barnhard performed the conditions mentioned in his will, yet he did not change his will. Has this any bearing upon our question? According to one line of authorities, it has; according to another, it has not. Where is the weight of authority?

In Colwell et ux. v. Alger, 5 Gray (Mass.) 67, there was a legacy upon condition that the legatee maintain testatrix during her life, and in that case it was remarked by Shaw, C. J.:

"Besides, a will can have no operation during the life of the testator; on the contrary, it is supposed to remain unknown, even to the beneficiaries. It would be strange, if acts to be done in the life time of the testatrix should be made a condition on which a legacy is to have effect at her decease; when the legacy, and even the whole will, may itself be revoked at any time before her decease". In Turns v. Hoover, 30 Pa. C. C. 508, 7 Dauph. 197, there was a devise to a daughter upon condition that she remain with her mother and take care of her as long as she lives. The daughter performed the conditions, and the estate was awarded to her, but the court remarked (p. 511) : "Even if the plaintiff had not fulfilled the condition, it is not clear that her interest under the will would have been adversely affected." The court then refers to the remark of Shaw, C. J., in Colwell et ux. v. Alger, supra, to support this observation.

There is another case in Pennsylvania, cited by counsel for Mrs. Richards, which seems to follow the apparent rule in Colwell v. Alger. This case is Donaldson v. Pettit, 31 Pa. Superior Ct. 567. In this case a widow devised land to her son with a limitation that, if he should endeavor to collect any claim from the estate of his deceased father, the devise should fail, and the son in his mother's lifetime did make a claim against his father's estate, but without knowledge of the provision in his mother's will, and the testatrix with knowledge that such claim was made made no change in her will. The son took the devise. In this case, the court said (p. 570), Beaver, J.:

"In contemplation of law, so far as the inheritance is concerned and for general purposes, a will takes effect only upon the death of the testator. . . .

"The testatrix in this case had knowledge of what her son had done. He, presumably, had no knowledge of what was contained in his mother's will; at least there is no allegation in the case stated that notice of the limitations contained in his mother's will had been in any way conveyed to him until its publication. The testatrix lived for more than two years after her son presented the claim against his father's estate before the auditor. If she regarded what he did as a violation of the terms of her will, it was perfectly competent for her to have changed or destroyed her will and made a different disposition of her property. That she did not do so is evidence that she either did not regard the presentation of the claim of the son against the estate of his father as a violation of the conditions which she had imposed upon the devise to him contained in the codicil of her will, or that she had determined to allow her disposition of her estate to remain notwithstanding. The unreasonableness of holding the devisee to the performance of conditions of which he had no knowledge, and in the nature of the case no means of knowledge, is apparent, and, if the testatrix did not hold her son to the observance of the conditions which she had placed in her will, presumably without his knowledge, the law should not undertake to do so, except upon legal grounds which would compel it. We do not think there are such grounds."

On the other hand, the following cases appear to hold contrary to Donaldson v. Pettit, supra.

In McKinley v. Martin, 226 Pa. 550, the testator devised his real estate to his wife for life and gave a particular house to a son but provided that "if he is living or societing with his divorced wife, he shall never inherit that property". The son lived with his divorced wife at times after testator's death and before the death of the life tenant, but there was no proof that he had lived with her between the date of the will and testator's death. This was held to be a condition precedent, and that the estate vested in the son absolutely when the will went into effect and was not defeated by his subsequent conduct. The inference we draw from this case is that, if the son had lived with his divorced wife between the date of the will and the date of testator's death, the devise to him would have been void.

In Adams v. Johnson, 227 Pa. 454, the testator left all his property to his wife for life, with remainder over to Anna Bell Adams, then resident in his house, providing she "continue to live with [my] said . . . [wife] until death". Anna Bell Adams did not live with testator's widow until her death because, as claimed by her, testator's widow made it impossible for her to do so. The court held this to be a condition precedent, requiring strict and literal performance, and that because of failure to perform the condition the devisee did not take.

In Gunning's Estate (No. 1), 234 Pa. 139, the testatrix bequeathed certain income to K. M., "provided he is not living with the woman he married in 1899— one Jane Wilson, should she die, or he be divorced from her—that is finally divorced—he is to be given absolutely one half of the principal, and the interest of the other half as long as he lives." At the time of testatrix's death, K. M. was living with his wife, J. W., referred to in the will. The court held that the condition annexed to the gift to K. M. was precedent, was not originally either impossible or illegal, and that as he was living with his wife, J. W., at testatrix's death, the condition annexed to his legacy was not fulfilled and he was not entitled to take. In this same case the court also lays down the rule (p. 142) : "The fact that the devisee is not at fault for the nonperformance of the condition precedent required, because he must do some act which he is incapable of performing, is immaterial".

524

In Fisher et al. v. Fisher et al., 80 Neb. 145, 113 N. W. 1004, there was a devise as follows: "In case my said son Oliver shall keep, care for and support me during the remainder of my life, as a consideration therefor, I give, devise and bequeath to my said son Oliver the south half . . . but if my said son shall fail to keep, care for and support me during all of the remainder of my life, said south half . . . shall become a part of the residue and remainder of my estate". This was held to be a devise upon condition precedent, requiring substantial performance to vest title in the devisee. In this case, one contention was that testator, by his conduct, waived performance, and as to this the court said (p. 152) : "It is doubtless true that the testator had a right to waive a performance of the conditions, but the only way that the waiver can be shown is by the will itself." In this case it was also held that ignorance of a condition precedent in a will does not excuse its nonperformance.

In Brennan et al. v. Brennan, 185 Mass. 560, 71 N. E. 80, A devised her residuary estate to B and his heirs, provided he should take care of testatrix and look after her while she lived. The court held this to be a condition precedent. B failed to perform the condition, and the devise to him fell. In this case it is said, among other things (p. 561) : "The tenant [B] relies upon *Colwell* v. *Alger*, 5 Gray 67, *Martin* v. *Martin*, 131 Mass. 547, and *Goff* v. *Britton*, 182 Mass. 293. But those cases are not applicable. In neither one of them was there as here a condition in terms. In *Colwell* v. *Alger, ubi*, supra, it is expressly said of the clause relied on that 'whatever else it might have meant, it was not a condition. It was not a condition in terms.' Neither were the circumstances such in either one of those cases as to show that a devise upon condition was intended, and that the language should be so construed. The condition would seem to be a condition precedent rather than subsequent. It related to something to be done during the lifetime of the testatrix before the estate could vest. . . .

"The fact that the tenant had no knowledge of the provisions of the will until after the death of the testatrix is immaterial, except so far as he takes as heir at law. In regard to this it is settled 'that where the devisee, on whom a condition affecting real estate is imposed, is also the heir at law of the testator, it is incumbent on any person who would take advantage of the condition, to give him notice thereof': Jarm. Wills (6th ed.) 853. *Kenrick* v. *Lord Beauclerk*, 11 East 657, 667; *Taylor* v. *Crisp*, 8 Ad. & El. 779. It is true that in *Colwell* v. *Alger, ubi supra*, the court seems to lay down the proposition that a condition will not be valid which without notice requires of a beneficiary the performance of acts during the lifetime of the testator, such as providing for his support. See Jarm. Wills, (6th ed.) 841, note 2, by Mr. Bigelow. But the proposition thus laid down is contrary to the weight of authority and was not necessary to the decision. *In re Hodges' Legacy*, L. R. 16 Eq. 92. *Astly* v. *Earl of Essex*, L. R. Eq. 290. *Roundel* v. *Currer*, 2 Bro. C. C. 67. *Johnson* v. *Warren*, 74 Mich 491. *Merrill* v. *Wisconsin Female College*, 74 Wis. 415."

In Merrill, Exec., v. Wisconsin Female College, 74 Wis. 415, 43 N. W. 104, the testatrix provided as follows: "I give and bequeath to *Wisconsin Female College*, located at Fox Lake, Wis., five thousand ($5,000) dollars; provided that the trustees have changed the name before my decease to Downer College, in memory of my husband." The trustees knew nothing about the terms of the will until probate, and they then tried to carry out the condition. It was held that this was too late, that ignorance was no excuse, and that the college did not take because the condition was not performed in the lifetime of the testatrix.

In Thompson's Estate, 304 Pa. 349, it is held that a condition precedent must

be strictly, literally, and punctually performed, and that it is no excuse that the failure to perform a condition precedent is through no fault of the legatee.

In our opinion, then, the weight of authority lies with the latter cases herein cited and not with Donaldson v. Pettit, supra.

By way of summary, we find as facts the following:

(1) Decedent remained in the Stauffer home (the home in which he lived at the time he executed his will) with Fannie Richards for approximately a year after he executed his will.

(2) Decedent moved to the home of Samuel Long approximately a year after he executed his will.

(3) Decedent lived with Samuel Long in the latter's home for approximately 2 years immediately preceding his death.

(4) Fannie Richards and Ida Barnhard did not provide board and lodging to decedent, or provide for his care and nursing while he was in ill health, in the Stauffer home, for approximately 2 years immediately preceding his death.

(5) Decedent left the Stauffer home because he was not satisfied with conditions there.

And our conclusions of law are:

(1) The estate devised and bequeathed by Elmer G. Stauffer, deceased, in his will to Fannie Richards and Ida Barnhard is an estate upon condition precedent.

(2) Strict and literal performance of the conditions was required in the lifetime of the testator.

(3) The fact that Fannie Richards and Ida Barnhard were ignorant of the provisions of decedent's will is no excuse for nonperformance, on their part, of the conditions.

(4) The failure of Fannie Richards and Ida Barnhard to perform the conditions precedent is not excused because such failure was through no fault of their own.

(5) Decedent, by his conduct, did not waive performance of the conditions precedent.

(6) Fannie Richards and Ida Barnhard did not perform the conditions precedent, as required by decedent in his will.

(7) The devise and bequest, in decedent's will, to Fannie Richards and Ida Barnhard, fails because of nonperformance by them of the conditions precedent.

(8) Decedent's estate, real and personal, vested under the terms of his will, at his decease, in his heirs at law as ascertained under the intestate laws.

The transfer inheritance tax has been paid and credit taken therefor in the account.

The accountant asks for witness and mileage fees of $5.52 to each of the following witnesses: Daniel H. Mervine, Cecelia Stauffer, and Joseph C. Stauffer. The latter two are claimants and were incompetent to testify, and an allowance cannot be made as to them. We therefore allow $5.52 to Daniel H. Mervine only. We also allow accountant 30 cents for subpœna.

The balance for distribution, together with the real estate, vested under the provisions of decedent's will, for reasons above stated, in the heirs at law of decedent, who are, under the intestate laws, an aunt and the children of deceased uncles and aunts. The latter would be first cousins to decedent. Second cousins are barred under the statute: Miles' Estate, 272 Pa. 329; Brooke's Estate, 84 Pa. Superior Ct. 415; Brodie's Estate, 30 Dist. R. 654.

From M. M. Burke, Shenandoah, Pa.